DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court following the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, denying appellant Spilios John Pappas' motion for relief from judgment pursuant to Civ.R. 60(B)(5). For the reasons set forth herein, we affirm.
 {¶ 2} The relevant facts are as follows. On December 7, 1999, appellant filed a complaint for divorce from his spouse appellee Rebecca M. Pappas. On this same date, the trial court entered a preliminary injunction which ordered, among other things, that the parties were enjoined from incurring debt in the name of the other spouse except for necessary food, housing, utilities, medical care, and necessary transportation. Sometime thereafter, appellant became aware that there were several credit cards that had been opened in his name without his consent.
 {¶ 3} On December 12, 2001, the trial court entered a final decree of divorce of the parties. Pursuant to the agreement of the parties, spousal support was awarded to appellee in the amount of $3,500 per month for a period of 18 months, and $3,000 per month thereafter for a period of 18 months. The decree further provided: "That the amount and term (duration) of the monthly spousal support payments was not subject to modification in any respect whatsoever." Also pursuant to the agreement of the parties, with respect to disposition of the proceeds from the sale of the real property located at 6134 Welsford Court, Maumee, Ohio, the trial court retained jurisdiction to hold a hearing on the matter if the parties were not able to agree. Further, the trial court retained jurisdiction to allocate any debt deficiency of the parties if the net proceeds derived from the sale of the real property was insufficient to pay the parties' individual debts.
 {¶ 4} On April 2, 2003, the trial court entered a judgment entry ratifying and approving the parties' agreement relative to the distribution of the net proceeds from the sale of the aforementioned real property.
 {¶ 5} On May 5, 2003, appellee filed a petition for bankruptcy. Appellee listed the credit cards which she had obtained using appellant's identity but she did not list appellant as a co-debtor.
 {¶ 6} On July 9, 2003, appellee was indicted by the Lucas County Grand Jury and was charged with a violation of R.C.2913.49(B), based on her theft of appellant's identity in conjunction with fraudulently obtaining the credit cards and allegedly incurring between $5,000 and $100,000 in debt. Said charge is a felony of the fourth degree.
 {¶ 7} With the charge against appellee pending in the court of common pleas, on June 8, 2004, appellant filed a motion to modify judgment pursuant to Civ.R. 60(B)(5). Appellant's request for relief was premised on the contention that, had he known that appellee had stolen his identity and had fraudulently obtained credit cards in his name during the course of the divorce proceedings, he would never have entered into either the December 21, 2001, or the April 2, 2003, agreements that were ratified by the trial court.
 {¶ 8} On July 28, 2004, appellee entered a no contest plea to a charge of misuse of a credit card in violation of R.C.2913.21(A)(1), a misdemeanor of the first degree.
 {¶ 9} After the parties submitted briefs on appellant's Civ.R. 60(B)(5) motion, on April 21, 2005, the trial court denied appellant's motion to modify judgment, concluding that appellant had failed to meet the three-prong test for granting relief sought pursuant to Civ.R. 60(B)(5). Appellant filed a notice of appeal. Appellant now raises the following assignment of error:
 {¶ 10} "The trial court abused its discretion in denying the plaintiff's motion for Civil Rule 60(B) relief."
 {¶ 11} It is well-settled that "[a] motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." Griffey v.Rajan (1987), 33 Ohio St.3d 75, 77. An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, unconscionable or arbitrary. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219.
 {¶ 12} Civ.R. 60(B) sets forth the following grounds for relief from judgment:
 {¶ 13} "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."
 {¶ 14} In order to obtain relief from judgment pursuant to Civ.R. 60(B), a movant must demonstrate that: "(1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ. R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTEAutomatic Elec., Inc. v. ARC Indus., Inc. (1976),47 Ohio St.2d 146, paragraph two of the syllabus. Presumably, this is the "three-prong test" the trial court concluded that appellant did not meet.
 {¶ 15} These requirements must be shown by "operative facts" presented in evidentiary material accompanying the request for relief. East Ohio Gas Co. v. Walker (1978), 59 Ohio App.2d 216. Relief pursuant to Civ.R. 60(B) will be denied if the movant fails to adequately demonstrate any one of the requirements set forth in GTE. Argo Plastic Products Co. v. Cleveland (1984),15 Ohio St.3d 389, 391.
 {¶ 16} Initially, we note that appellant brought his motion and the trial court reviewed the record under the "catchall" provision of Civ.R. 60(B)(5). Under the facts and arguments on the record, likely Civ.R.60(B)(2) (newly discovered evidence) or Civ.R. 60(B)(3) (fraud), rather than Civ.R. 60(B)(5) is the more appropriate provision under which appellant should have brought his motion. We recently stated:
 {¶ 17} "A party is entitled to relief from judgment under Civ.R. 60(B)(5), the `catchall' provision, only if he can demonstrate any other reason not listed in Civ.R. 60(B)(1)-(4) that justifies relief being granted. Ohio courts have routinely said that Civ.R. 60(B)(5) is not to be used as a substitute for any other more specific provisions of Civ.R. 60(B)(1)-(4).Caruso-Ciresi, Inc. v. Lohman (1983), 5 Ohio St.3d 64, 66. The catchall provision should only be used in rare cases where substantial grounds exist to justify relief. Wiley v. Gibson
(1997), 125 Ohio App.3d 77, 81." Kluge v. Kluge, 6th Dist. No. WD-05-055, 2006-Ohio-969, at ¶ 10.
 {¶ 18} However, apparently to avoid the strictures of the one-year time frame to bring a motion under Civ.R. 60(B)(2) or (3), appellant argued for relief under the catchall provision of Civ.R. 60(B)(5) which has a more elastic "within a reasonable time" requirement for bringing a motion. Appellant contends that the unique issue of identity theft in the present case opens the door to the Civ.R. 60(B)(5) relief. Under this assumption, we will review appellant's arguments.
 {¶ 19} In the present case, appellant argues that pursuant to the judgment entry denying his Civ.R. 60(B)(5) motion, the trial court created and relied upon five facts not evidenced in the record. In its judgment entry, the trial court did not tie each of these five "facts" to a particular prong of the GTEAutomatic test. However, most of the "facts" as objected to by appellant seem to focus primarily on prongs one (meritorious claim) and prong two (entitled to relief under the "catchall" provision of Civ.R. 60(B)(5)) of the GTE Automatic test. We will examine each "fact" in turn.
 {¶ 20} First, appellant contends that there is no evidence that he knew at the time of either the December 12, 2001 divorce decree or the April 2, 2003 agreed entry for distribution of proceeds on the sale of the marital residence, that appellee had fraudulently incurred credit in his name. Although appellant admits that, he was aware of the fraudulent credit card debt and he "strongly suspected" that appellee was responsible, he asserts that he did not have absolute knowledge that appellee was the individual responsible. Appellant asserts that he did not absolutely know it was appellee until she entered an initial not guilty by reason of insanity plea to the identity theft charge on October 8, 2003, well after the December 2001 decree and the April 2, 2003 agreement on the distribution of proceeds from the sale of the marital residence. However, in a January 31, 2005 affidavit, appellee's divorce counsel states that all this credit card debt was thoroughly discussed and reviewed as part of the settlement negotiations prior to the December 2001 decree. This evidence shows the operative facts that appellant had sufficient knowledge at the time of the December 2001 divorce decree and subsequent April 2003 distribution of proceeds from which to negotiate regarding spousal support. Further, since appellant "strongly suspected" that appellee was responsible, he could have requested a hearing on the matter of appellee's alleged violation of the preliminary injunction by incurring debts in appellant's name. Appellee's credibility on the matter would have then been directly before the trial court.
 {¶ 21} The second fact and the fifth fact cited by appellant are nearly the same. The second fact presumed by the trial court was that appellant failed to act to mitigate his damages. The fifth fact the trial court noted was that appellant's alleged damages were related, at least in part, to his neglect in correcting his own credit report. Appellant contends that there was evidence that he communicated with the subject credit card companies and undertook expensive and time-consuming efforts to repair his credit rating. However, it appears that the trial court did not have such evidence before it. Appellant's counsel
asserts in his June 8, 2004 memorandum in support of his Civ.R. 60(B)(5) motion to modify judgment and his November 10, 2004 supplemental memorandum that appellant spent a lot of time trying to straighten out his credit rating. However, there was no testimony or other "evidence" of these efforts attached to appellant's briefs submitted to the trial court.
 {¶ 22} The third fact appellant cites is the trial court's assumption that appellee's post-decree bankruptcy filing and criminal prosecution had no material bearing on appellant's rights or options. Appellant bears the burden of adequately demonstrating the operative facts. It is not clear how being named a co-debtor would have been advantageous for appellant relative to modifying the spousal support order. Appellant claims he would have had an opportunity to object to the discharge of the subject credit card debt. However, appellee is not asserting that he had to pay any of the debt that resulted from the charges to the credit cards. In addition, relative to appellee's criminal plea in July 2004, even before this plea, again, appellant could have requested a hearing in the trial court on allegations of appellee's violation of preliminary injunction.
 {¶ 23} The fourth fact appellant cites is the trial court's statement that appellant was not ever, in any practical sense, a co-obligor on any of the credit card debt since appellee had fraudulently used appellant's name in incurring the indebtedness. The trial court's observation appears correct to the extent that, again, appellee is not asserting that he has had to pay any of the direct debt that resulted from the charges to the credit cards. However, appellant asserts that in the "real world" of credit reports and credit ratings, he was being held responsible for these debts and he suffered damages as a result. We find that the ramifications of a bad credit rating were foreseeable to appellant at the time of the December 2001 negotiations prior to appellant's attorney signing the final entry of divorce. At this time, appellant knew that there was outstanding debt on unauthorized credit cards in his name and that he "strongly suspected" that appellee was behind it. Further, the evidence demonstrates that appellant had knowledge of the effects of a bad credit rating at the time of the April 2003 distribution of proceeds from the sale of the real estate. According to the affidavit of Steven Finch, assistant vice-president of a bank to which appellant applied for mortgage refinancing at an advantageous interest rate in 2002, by September 6, 2002, appellant knew that his application was denied due to "Delinquent Credit Obligations" appearing on his credit report. This knowledge could have aided appellant in negotiations or a hearing before the trial court. Instead, appellant signed the April 2003 judgment entry.
 {¶ 24} Accordingly, appellant has failed to adequately demonstrate all of the requirements set forth in GTE, and the trial court did not abuse its discretion in denying appellant's Civ.R. 60(B)(5) motion for relief from judgment. Appellant's assignment of error is not well-taken.
 {¶ 25} The judgment of the Lucas Court of Common Pleas, Division of Domestic Relations, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Singer, P.J. concur.